| STATE OF INDIANA | | IN THE KOSCIUSKO SUPERIOR COURT |
|---|---|---|
| | SS: | |
| COUNTY OF KOSCIUSKO | | CAUSE NO:   43D04-2306-CT-000044 |

**Lanae Peter**,

    Plaintiff,

v.

**BOATHOUSE RESTAURANT, INC.**,

    Defendant.

## COMPLAINT FOR DAMAGES AND REQUEST FOR JURY TRIAL

Ms. Peter is suing THE BOATHOUSE for sexual harassment in violation of TITLE VII and for negligent hiring and retention in violation of Indiana law. This lawsuit is filed in the Kosciuscko Superior Court because THE BOATHOUSE's principal office is located in Kosciusko County. Ms. Peter seeks all available relief and respectfully requests a trial by jury.

Respectfully submitted,

*/s/ Benjamin C. Ellis*
Benjamin C. Ellis
HKM EMPLOYMENT ATTORNEYS LLP
320 N. Meridian St., Ste. 615
Indianapolis, IN 46204
P/F   |   (317) 824-9747
Email   |   bellis@hkm.com

1. **JURISDICTION & VENUE**

   1. This Court has original jurisdiction, under Ind. Code § 33-29-1.5-2(1) of Ms. Peter's claims for violations of TITLE VII and Indiana law because "[a]ll superior courts have [ ] original and concurrent jurisdiction in all civil cases. . . .".

   2. This Court is a proper venue for this lawsuit, under Ind. T.R. 75(A)(1), because THE BOATHOUSE resides in the County.

2. **PARTIES**

   2.1. **Plaintiff**

   3. Plaintiff Lanae Peter resides in Kosiuscko County, Indiana.

   2.2. **Defendant**

   4. Defendant BOATHOUSE RESTAURANT, INC. was, at all relevant times, an Indiana corporation (Business ID No. 2000031000153) with its principal office located in Kosciusko County.

3. **STATEMENT OF FACTS**

   5. Ms. Peter was hired to work at THE BOATHOUSE in August 2019 as a waitress.

   6. Other than a handful of incidents relating to tardiness, Ms. Peter met or exceeded THE BOATHOUSE's legitimate performance expectations.

   7. From the beginning of her employment, Ms. Peter was exposed to a sexually charged, hostile work environment.

8. The male staff of the restaurant would rub her shoulders or grab at her as she walked by.

9. Ms. Peter did her best to ignore these advances, discouraging them by backing or turning away and telling the men to leave her alone.

10. One kitchen employee who had been with THE BOATHOUSE for quite some time, Antonio, also spoke inappropriately to Ms. Peter, saying such things to her as:

- "Hey, sexy;"
- "Come here, I want to fuck you."

11. On days when Ms. Peter rebuffed Antonio, he would become angry, saying:

- "Dumb bitch;"
- "Annoying bitch;"
- "You should just leave."

12. In September 2021, Antonio's persistent harassment worsened, culminating in a physical assault.

13. Ms. Peter walked through the kitchen to the cooler, where she intended to gather creamers for tables in the dining area.

14. Upon entry into the cooler, Ms. Peter became aware that Antonio had followed her (or was already in the cooler) when he began rubbing her shoulders from behind.

15. Startled, Ms. Peter immediately asked Antonio to stop, saying "Please don't touch me."

16. Antonio did not remove his hands from her, and instead began groping her breasts.

17. He rubbed his erection against Ms. Peter's buttocks.

18. He reached between her legs and said to Ms. Peter "I want you to get wet right now."

19. Terrified that Antonio was about to rape her, Ms. Peter struggled against him and fought to get Antonio off her.

20. When she was finally free, Ms. Peter exited the cooler, shaken.

21. Because of her history of harassment and assault at the restaurant, Ms. Peter was afraid to report the assault to any of the restaurant managers.

22. A fellow waitress noticed that Ms. Peter was distracted and visibly distressed and approached her, asking what the matter was.

23. After learning of the assault, this coworker reported it on Ms. Peter's behalf to manager Erin Rhodes.

24. Ms. Peter then left the restaurant to recover in my car.

25. Brice France (Manager) approached Ms. Peter while she was resting in her car and informed her that Antonio had been fired and that he would "never be back."

26. France went on to tell Ms. Peter that Antonio had harassed other women at the restaurant, saying "This is ridiculous. He's done this before. He's done."

27. France then asked Ms. Peter to come back into the restaurant

and finish her shift since they were in the middle of a rush.

28. Ms. Peter agreed to do so.

29. When Ms. Peter returned to the restaurant, Rhodes pulled her aside and said that when Rhodes confronted Antonio about the assault, he said "she [Ms. Peter] asked for it."

30. Rhodes fired him on the spot.

31. The next day, Ms. Peter reported to work; still shaken from Antonio's assault, however, she asked to go home.

32. Co-owner Kyle Phelps agreed and gave Ms. Peter a check for $200 to cover the missed shift.

33. Later that day, while Ms. Peter was at home, she received a call from co-owner Peter Christos and Rhodes, ostensibly to check and see how she was recovering following the assault.

34. Christos and Rhodes went on to tell Ms. Peter that Antonio would be in the kitchen on Sunday and further explained that although he had sexually assaulted her, management was allowing Antonio to work during an investigation into the assault.

35. Upset and in disbelief, Ms. Peter responded that she could not work while he was there.

36. Rhodes assured Ms. Peter that after a week the investigation would be over and Antonio would be fired, this time permanently.

37. Afraid to be near Antonio, Ms. Peter was forced to miss a week of work and wages.

38. On the Friday following Antonio's assault, Ms. Peter met with Christos and Phelps at the restaurant.

39. They told Ms. Peter she needed to "hold my head high," and "be the strong powerful woman [we know you are]" and to "say no better next time."

40. Ms. Peter was completely (and reasonably) blindsided.

41. Ms. Peter had been assured that, after the assault, Antonio would not return.

42. Christos and Phelps asked Ms. Peter what would change if she had her way.

43. Ms. Peter told them she simply wanted to keep her job, that she was upset at having to miss a week of work during the investigation, and that she felt Antonio should no longer be employed by the restaurant.

44. Christos and Phelps told Ms. Peter that after Antonio's firing, they had received pushback from the kitchen staff and they simply "could not afford to let him go."

45. Accordingly, because she could not continue to work with Antonio, and because THE BOATHOUSE refused to terminate his employment, Ms. Peter resigned her employment.

4. **STATEMENT OF CLAIMS**

   **4.1. Sexual harassment in violation of Title VII**

   46. The conduct of Antonion, and Ms. Peter's other male coworkers, created a subjectively and objectively offensive workplace.

   47. Ms. Peter's sex (female) was the cause of the harassment.

   48. This harassment was severe and pervasive – being both verbal and physical, and recurring throughout Ms. Peter's employment.

   49. THE BOATHOUSE should be held liable as this harassment occurred in the workplace during work hours, and because THE BOATHOUSE was aware of Antonio's history of workplace harassment.

   **4.2. Negligent hiring in violation of Indiana law.**

   50. THE BOATHOUSE owed Ms. Peter a duty of care in their employment relationship.

   51. To the extent THE BOATHOUSE knew or should have known that Antonio had a history of sexually harassing behavior, it breached that duty by hiring him.

   52. This breach by THE BOATHOUSE proximately caused Ms. Peter to be sexually harassed.

### 4.3. Negligent retention in violation of Indiana law.

53. THE BOATHOUSE owed Ms. Peter a duty of care in their employment relationship.

54. To the extent THE BOATHOUSE knew or should have known that Antonio had a history of sexually harassing behavior, it breached that duty by retaining him as an employee.

55. This breach by THE BOATHOUSE proximately caused Ms. Peter to be sexually harassed.

## 5. PRAYER FOR RELIEF

Ms. Peter respectfully requests that judgment be entered in her favor, and against THE BOATHOUSE, on all claims, for its violations of TITLE VII and Indiana law. She requests all available relief on her claims, including the following:

    a.    Back pay and reinstatement (or front pay);

    b.    Compensatory and punitive damages;

    c.    Attorney fees and costs; and

    d.    Prejudgment and post-judgment interest.

## 6. JURY DEMAND

As required by Ind. T.R. 38(B), Ms. Peter respectfully requests a trial by jury on all issues so triable.